UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                             Plaintiff,<br><br>v.<br><br>DANIEL JAVIER,<br><br>                            Defendant. | Case No.: 18-cr-4609-DMS-4;<br>              21-cv-173-DMS<br><br>**ORDER**<br>**(1) APPOINTING COUNSEL AND SETTING STATUS CONFERENCE;**<br>**(2) GRANTING MOTION FOR PROTECTIVE ORDER;**<br>**(3) DENYING MOTION TO COMPEL PRODUCTION OF RECORDS; AND**<br>**(4) OVERRULING OBJECTION TO SIMS AFFIDAVIT** |

      Pending before the Court is Defendant Daniel Javier's ("Javier" or "Defendant" or "Petitioner") motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (ECF No. 139), motion to compel production of evidence (ECF No. 158), motion for protective order (ECF No. 160), objection to defense counsel Thomas S. Sims' affidavit (ECF No. 162), second motion for leave to amend Section 2255 motion (ECF No. 177), and a motion for reconsideration of the denial of his first motion for leave to amend (ECF No. 185). For the reasons explained below, the Court appoints counsel, grants Defendant's motion for protective order (ECF No. 160), denies his motion to compel production of

records (ECF No. 158), overrules his objection to the Sims affidavit (ECF No. 162), and sets a status conference on February 9, 2024.

## I.  BACKGROUND

### A. Factual Background

The following facts are taken largely from the Pre-Sentence Report prepared by the United States Probation Office ("USPO"). (*See* ECF No. 99.) On October 24, 2018, the United States filed an indictment in the Southern District of California charging Petitioner and three co-defendants with conspiracy to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Beginning around 2016, law enforcement agencies investigated the activities of the Jimenez Transnational Criminal Organization (TCO), led by Jose Jimenez-Jimenez (charged in related case *United States v. Jimenez-Jimenez*, No. 18-cr-4525-BAS-1). Agents learned that the Jimenez TCO was involved in drug trafficking and alien smuggling in San Diego County, California, and in Tijuana and Ejido Jacume, Baja California, Mexico. Agents intercepted communications between Jimenez, Dawn Najera (charged in related case *United States v. Najera*, No. 18-cr-4611-LAB-2) and Michael Grandys ("Grandys") (a co-defendant in this case).

On June 26, 2018, a confidential source ("CS") arranged to purchase 4 ounces of methamphetamine from Yesenia Barragan ("Barragan") (another co-defendant in this case). The CS and Barragan communicated by phone and text message and agreed to conduct the transaction at a location in San Diego County on June 27, 2018. Barragan advised the CS that 4 ounces would cost $1,000. Barragan unsuccessfully tried to obtain methamphetamine for the transaction from William Silva ("Silva") (a co-defendant) and then reached out to Grandys. Grandys contacted Defendant to ask if he could supply the requested drugs and Defendant confirmed he could. Grandys went to Defendant's residence in Escondido, CA to get the drugs. Barragan then obtained the drugs from Grandys and sold the 4 ounces of methamphetamine to the CS who paid Barragan $1,000 in exchange. A laboratory analysis revealed the net weight was 101.3 grams with a 54.7% purity, resulting in 54.7 actual grams of methamphetamine.

On October 24, 2018, a grand jury in the Southern District of California returned an indictment charging Barragan, Silva, Grandys, and Defendant Javier of conspiracy to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846, (Indictment, ECF No. 1), and a magistrate judge issued a warrant for Javier's arrest, (ECF No. 5).  On October 29, 2018, agents arrested Javier at his Escondido, CA home without incident.  Agents seized approximately 367.6 grams of methamphetamine from his home and at least $3,000 in cash in Javier's possession.[1]  Later that day, Javier was arraigned before United States Magistrate Judge Karen S. Crawford, who appointed attorney Thomas S. Sims as counsel for Defendant Javier.  (Minute Entry, ECF No. 8.)

Post-arrest, Javier admitted to agents that he was involved in narcotics trafficking. He stated that prior to his involvement in narcotics trafficking, Defendant worked lawfully in construction but stopped after suffering a hernia from a work-related injury.  He admitted that he began to distribute 0.5–1 pounds of methamphetamine per week to a select few undisclosed persons on a regular basis.  Javier stated that he obtained narcotics from an individual residing in Escondido at a price of approximately $2,200 per pound.  Javier explained he believed that this Escondido source obtained the methamphetamine from undisclosed individuals in Mexico.

**B. Plea Agreement**

On July 17, 2019, Defendant pled guilty pursuant to a plea agreement.  (*See* Plea Agreement, ECF No. 78; Findings and Recommendation, ECF No. 79.)  In the Plea Agreement, the parties agreed to a base offense level of 30 under U.S.S.G. § 2D1.1, an adjustment of -3 for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a)–(b), and a -1 adjustment for efficient resolution and appellate waiver.  (Plea Agreement at 8.)  The Parties reached no agreement on whether Defendant should receive a career criminal enhancement under U.S.S.G. § 4B1.1(a) but agreed that if the Court found Defendant to be

---

[1] Conflicting reports indicate a total of either $3000 or $4,886 in cash. (*See* PSR at 5, ECF No. 99.)

a career criminal, the applicable base offense level would be determined pursuant to U.S.S.G. § 4B1.1(b) and Defendant would be ineligible for any role reduction. (*Id.*) The Parties also reached no agreement on Defendant's criminal history category. (*Id.* at 9.) The Government agreed to recommend that Defendant be sentenced to (a) a sentence within the advisory guideline range as calculated by the Government or (b) a statutory mandatory minimum sentence if greater than the guideline range. (*Id.*) Defendant agreed to waive all rights to appeal and to collaterally attack "every aspect of the conviction and sentence" except that Defendant may collaterally attack the conviction or sentence on the basis that he received ineffective assistance of counsel ("IAC"). (*Id.* at 10.)

On September 16, 2019, on advice of counsel and with counsel present, Defendant provided comments to USPO ahead of his sentencing. Defendant adopted the factual basis portion of the plea agreement as his own statement. According to the plea agreement, beginning on or about April 2018 and continuing up to and including October 25, 2018 (the date of Defendant's arrest), an agreement existed between at least two people to distribute methamphetamine. Defendant joined that agreement knowing that its purpose was to distribute methamphetamine and intending to help accomplish that purpose. Specifically, on June 27, 2018, Grandys contacted Defendant by telephone multiple times between 2:00 and 7:00 PM seeking four ounces of methamphetamine. Defendant agreed to provide it and told Grandys to meet at Defendant's home in Escondido. Grandys went to Defendant's home and Defendant provided him with four ounces of methamphetamine. Defendant agreed that the conspiracy involved at least 54.7 grams of actual methamphetamine, and that such a quantity fell within the scope of the conspiracy and was reasonably foreseeable to Defendant. Finally, Defendant agreed he specifically knew that the transaction involved methamphetamine and that he was aware of the quantity.

Defendant also explained that Grandys was his friend but that he did not know co-defendants Barragan or Silva. Defendant stated that on the day of the offense, Grandys called Defendant to ask him for methamphetamine. Defendant did not have the requested drugs but said he would obtain the requested quantity from a source in Escondido.

Defendant subsequently provided the requested drugs to Grandys. Defendant stated he believed he would receive either money or drugs in compensation for his efforts. He stated that he committed the offense to support his drug addiction. He apologized for his actions and vowed to never to commit a similar offense again.

### C. Criminal History

Defendant has 2 prior drug-related felony convictions. First, On July 23, 2008, Defendant was arrested for possession of heroin. On January 7, 2009, Defendant pled guilty to one count of possession of heroin for sale in violation of Cal. Health & Safety Code § 11351, and received a sentencing enhancement for possession of a firearm in connection with the offense pursuant to Cal. Penal Code § 12022(a). He was given a suspended custodial sentence of 7 years in addition to 4 years of probation. He spent a total of 91 days in jail in connection with this offense. This is a 2-point offense under the federal sentencing guidelines. *See* U.S.S.G. § 4A1.1(b).

Second, on November 12, 2008, after posting bond following his arrest for the heroin offense, Defendant was arrested for possession of methamphetamine. On January 7, 2009, Defendant pled guilty to one count of possession of methamphetamine for sale in violation of Cal. Health & Safety Code § 11378, concurrently with his guilty plea to the heroin offense above. He received a suspended custodial sentence of 32 months in addition to 4 years of probation. He spent a total of 85 days in prison in connection with this offense. This is a 2-point offense under the federal sentencing guidelines. *See* U.S.S.G. § 4A1.1(b).

Defendant's probation in connection with both drug offenses was revoked on April 19, 2011, for failing to appear. On March 14, 2012, the suspended sentences were imposed—7 years for the heroin offense and 32 months for the methamphetamine offense, to run consecutively. Defendant served 41 actual months. The revocation resulted in a 1-point increase in criminal history points to one of Defendant's sentences above. *See* U.S.S.G. § 4A1.2(k) & n.11 ("Where a revocation applies to multiple sentences, and such sentences are counted separately under § 4A1.2(a)(2), add the term of imprisonment imposed upon revocation to the sentence that will result in the greatest increase in criminal

history points.").

Defendant also has two 0-point offenses on his record: a hit-and-run driving offense from 1996 (when Defendant was 18 years old) which caused property damage, and a DUI from 2000.

**D. Sentencing**

This case was originally assigned to the Honorable Larry Alan Burns. On January 13, 2020, Judge Burns sentenced Defendant to a custodial sentence of 180 months plus 10 years of supervised release. At sentencing, Judge Burns concluded, and both parties agreed, that Defendant qualified for a career offender enhancement which raised Defendant's base offense level from 30 to 37. (Tr. of Sentencing Hr'g, ECF No. 180, at 15.) *See* U.S.S.G. §§ 4B1.1–2. From there, the Court granted a -3 adjustment for acceptance of responsibility on the Government's motion, *see* U.S.S.G. § 3E1.1(a)–(b), and a variance equivalent to a -1 adjustment for appellate waiver and efficient resolution, resulting in an adjusted offense level of 33. (Tr. of Sentencing Hr'g at 15.) As a career offender, Defendant's criminal history category was recast to VI. (*Id.*) *See* U.S.S.G. § 4B1.1. The resulting guideline range was 235 to 293 months. From there, Judge Burns varied downward and imposed a sentence of 180 months on account of the relatively small amount of drugs (2 ounces) involved in the offense. (Tr. of Sentencing Hr'g at 20–21.) Both Parties agreed that Defendant qualified for the career offender enhancement and was ineligible for safety valve relief. The Court entered judgment on January 21, 2020.

**II.    POST-SENTENCING PROCEDURAL HISTORY**

On January 19, 2021, Defendant, proceeding pro se, mailed his Section 2255 motion (Motion to Vacate, Set Aside, or Correct a Sentence ("Def.'s Mot.") at 31, ECF No. 139) and it was filed on the docket nunc pro tunc to January 25, 2021. In his motion, Defendant raised four grounds for relief: (1) IAC for trial counsel's alleged failure to investigate the strength of the Government's case against Defendant and possible defenses (*id.* at 4–18); (2) IAC due to counsel allegedly providing Defendant with "incorrect and/or invalid legal advice" rendering Defendant's plea "not knowing" or "informed" (*id.* at 18–23); (3) IAC

1  at sentencing for counsel's alleged failure to object to errors in the Pre-Sentence Report
2  regarding Defendant's criminal history (*id.* at 23–27); and (4) plain error in the sentence
3  imposed due to the Court's consideration of allegedly speculative facts not supported by
4  evidence in the record (*id.* at 27–28).  Notably, in Defendant's second ground for relief,
5  Defendant alleged his attorney incorrectly advised him that if he signed the plea agreement,
6  he would face a maximum sentence of 120 months and that at his change of plea hearing,
7  his attorney coached him to answer the magistrate judge's questions untruthfully.  (*Id.* at
8  20–23.)  Defendant also requested additional time to provide a supporting memorandum
9  of law and requested the appointment of counsel.  (*Id.* at 28–30.)

10       On February 1, 2021, Judge Burns (1) ordered the Government to respond to the
11  petition by filing the transcript of the change of plea hearing; (2) ordered trial counsel to
12  file an affidavit under penalty of perjury responding to Defendant's allegations and finding
13  that Defendant had waived attorney-client privilege by filing the Section 2255 motion
14  alleging IAC; (3) denied without prejudice Defendant's request for appointment of counsel;
15  and (4) granted Defendant's request to file a supplemental memorandum of law limited to
16  arguments raised in his original motion. (Order dated February 1, 2021, at 2–3, ECF No.
17  140.) On March 1, 2021, the Government filed the transcript of the change of plea hearing.
18  (ECF No. 145-1.)  Also on March 1, 2021, defense counsel filed an affidavit in response
19  to the Court's order. (Sims Affidavit, ECF No. 147.)

20       On May 6, 2021, Defendant filed a supplemental memorandum of law.  (Def.'s
21  Mem., ECF No. 153.)  Defendant reframed his original motion as raising 3 claims which
22  stem from the same core set of facts: (1) unlawful sentence due to erroneous career-
23  offender sentence enhancement under U.S.S.G. § 4B1.1 (*id.* at 6–15); (2) coerced plea in
24  violation of due process (*id.* at 16–21); and (3) IAC for failing to appeal an erroneous
25  sentence and failing to investigate Defendant's eligibility for the career-offender
26  enhancement, (*id.* at 21–50). On May 7, 2021, Defendant moved for leave to amend his
27  Section 2255 motion with two additional claims: (1) an express claim for unlawful
28  sentence; and (2) a new claim for failure to appeal. (Def.'s First Mot. for Leave to Amend,

ECF No. 156.) Also on May 7, 2021, Defendant moved to compel production of certain documents and records. (ECF No. 158.) This motion remains pending. Defendant's third filing dated May 7, 2021, was a motion for a protective order concerning the Sims Affidavit (ECF No. 147). (ECF No. 160.) This motion remains pending. Defendant's fourth and last filing dated May 7, 2021, was an objection to the Sims Affidavit. (ECF No. 162.) This motion also remains pending.

On November 26, 2021, Judge Burns set a briefing schedule for Defendant's first motion for leave to amend and ordered the Government to file any opposition by December 10, 2021, and Defendant to file any reply by January 7, 2022. (Order dated November 26, 2021, ECF No. 165.) On December 10, 2021, the Government filed a response in opposition. (ECF No. 166.) On January 10, 2022, Defendant filed a reply. (ECF No. 167.)

On April 6, 2022, nunc pro tunc to June 1, 2021,[2] Defendant filed a second motion for leave to amend his Section 2255 motion seeking to make two amendments to his original Section 2255 motion. (Def.'s Second Mot. for Leave to Amend, ECF No. 177.) This motion remains pending. In this motion Defendant seeks to make two amendments to his original Section 2255 motion: (1) add a new claim in light of the Ninth Circuit's decision from May 21, 2021 in *United States v. Lopez*, 998 F.3d 431, 437 (a defendant is eligible for safety-valve relief under 18 U.S.C. § 3553(f)(1) and is exempt from mandatory minimum sentences unless he has all of the following: (A) more than 4 criminal history points excluding 1-point offenses, (B) a prior 3-point offense, and (C) a prior 2-point violent offense) that he would have qualified for safety-valve relief and his counsel should have advised him of his eligibility for safety-valve relief (the "Lopez IAC argument"); and (2) add new factual support for his claim that counsel should have advised him of the "buyer-seller" rule, *see United States v. Moe*, 781 F.3d 1120, 1123 ("a conviction for conspiracy cannot be based solely on the purchase of an unlawful substance, even though

---

[2] It is unclear why the motion was not filed on the public docket until April 6, 2022.

such a transaction necessarily involves an agreement between at least two parties, the buyer and the seller"), as a possible defense to his conspiracy charge. (See Def.'s Second Mot. for Leave at 6–9.) The United States filed a response in opposition to Defendant's second motion for leave. (ECF No. 179.) Defendant filed a reply. (ECF No. 181.)

On April 15, 2022, Judge Burns denied Defendant's first motion for leave to amend (ECF No. 156) reasoning that the amendments he sought to make were not new claims but simply extensions of his original claim or were futile. (Order at 2–4, ECF No. 178.) In the same Order, Judge Burns set a briefing schedule on Defendant's second motion for leave to amend (ECF No. 177) directing the Government to file any opposition by April 29, 2022 and directing Defendant to file any reply by May 13, 2022. (*Id.* at 5–6.) On April 29, 2022, the Government filed an opposition as directed. (U.S. Resp. in Opp'n to Def.'s Second Mot. for Leave to Amend, ECF No. 179.) On May 17, 2022, Defendant filed a reply. (Reply in Supp. of Second Mot. for Leave to Amend, ECF No. 181.)

On September 29, 2022, Judge Burns recused from this matter and the case was reassigned to the undersigned district judge. (ECF Nos. 182–83.)

On October 19, 2023,[3] Defendant filed a motion for reconsideration of Judge Burns' denial of his first motion for leave to amend. (Def.'s Mot. for Reconsideration, ECF No. 185.) This motion remains pending. In this motion, Defendant seeks reconsideration of Judge Burns' order under Federal Rule of Civil Procedure 54(b) (court may revise an interlocutory order at any time before final judgment) and Local Rule 7.1(i)(1) (specifying criteria required for a reconsideration motion). In the order denying Defendant's first motion for leave to amend, Judge Burns reasoned that Defendant's first request (to add a claim for an unlawful sentence) was "an extension of his original ineffective assistance of counsel claim and duplicates allegations already included in the Petition" (Order dated April 15, 2022, at 2, ECF No. 178) and that his second request (to add an IAC claim based

---

[3] It appears Defendant attempted to file the motion sooner as it is signed July 26, 2023.

on trial counsel's failure to appeal) was "meritless" (*id.* at \*5). Defendant moves for reconsideration in light of new Ninth Circuit authority: In *United States v. Castillo*, 69 F.4th 648 (9th Cir. 2023), the Ninth Circuit held that a conviction for conspiracy to distribute a controlled substance "is not a 'controlled substance offense' under the career offender enhancement, [U.S.S.G.] § 4B1.1" because "the text of § 4B1.2(b) unambiguously does not include inchoate offenses," and the Supreme Court's decision in *Kisor v. Wilkie*, 588 U.S. ——, 139 S. Ct. 2400 (2019),[4] no longer permits lower courts to rely on the commentary of an unambiguous guideline. *Castillo*, 69 F.4th at 664.

### III. DISCUSSION

Presently, there are six motions pending before this Court. After review of Defendant's motions, the Court appoints counsel and concludes the interests of justice warrant the appointment of counsel in this case. For the reasons explained below, the Court also grants Defendant's motion for protective order (ECF No. 160), denies Defendant's motion to compel production of records (ECF No. 158), overrules Defendant's objection to the Sims affidavit (ECF No. 162), and sets a status conference for February 9, 2024.

**A. Appointment of Counsel**

In his original Section 2255 motion dated January 19, 2021, Defendant requested the appointment of counsel. Judge Burns denied the request without prejudice and explained: "After the government's and Sims' responses are filed, the Court will be in a better position to know whether appointment of counsel is appropriate." (Order dated February 1, 2021, at 3.) Since Judge Burns' February 1, 2021 Order, the Government and defense counsel have filed their responses, and the record in this case has expanded significantly. Accordingly, the Court will re-evaluate Defendant's request for appointment of counsel.

///

---

[4] In *Kisor v. Wilkie*, the Supreme Court held that *Auer* deference—the doctrine that courts should defer to an agency's construction of its own regulation—may apply "only if a regulation is genuinely ambiguous." *Kisor*, 139 S. Ct. at 2414. ("*Auer* deference" derives its name from the Supreme Court case *Auer v. Robbins*, 519 U.S. 452 (1997).)

1. Appointment of Counsel in Section 2255 Proceedings

The Sixth Amendment right to counsel does not apply in Section 2255 proceedings. *United States v. Angelone*, 894 F.2d 1129, 1130 (9th Cir. 1990). However, a court may appoint counsel for a prisoner seeking habeas relief under Section 2255 when "the court determines that the interests of justice so require and such person is financially unable to obtain representation." *See* 18 U.S.C. § 3006A(a)(2)(B). A court is required to appoint counsel if it determines that an evidentiary hearing is needed or that appointment of counsel is "necessary for effective discovery." *See* Rules Governing Section 2255 Proceedings, Rule 6(a) ("If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A."); *id.* Rule 8(a) ("If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A."). Beyond this, a court has discretion in deciding whether to appoint counsel for a Section 2255 motion. *See United States v. Gerrans*, No. 18-CR-00310-EMC-1, 2023 WL 3437292, at *1 (N.D. Cal. May 12, 2023); *cf. Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986) (a court has broad discretion to appoint counsel for an indigent person seeking relief under Section 2254). Courts generally limit the appointment of counsel to: (1) capital cases; (2) cases that turn on substantial and complex procedural, legal or mixed legal and factual questions; (3) cases involving uneducated or mentally or physically impaired petitioners; (4) cases likely to require the assistance of experts either in framing or in trying the claims; (5) cases in which petitioner is in no position to investigate crucial facts; and (6) factually complex cases. *See Peasley v. California*, No. 23-CV-04218-JSC, 2023 WL 8439336, at *1 (N.D. Cal. Nov. 7, 2023) (citing 1 J. Liebman & R. Hertz, Federal Habeas Corpus Practice and Procedure § 12.3b at 383–86 (2d ed. 1994)).

2. Analysis

The Court finds that the interests of justice warrant the appointment of counsel in this case as Defendant's filings raise "substantial and complex procedural, legal or mixed legal and factual questions." *Id.*

In his motion for reconsideration of Judge Burns' order denying his first motion for leave to amend (ECF No. 185), Defendant points to the Ninth Circuit's recent decision in *Castillo* which held that a conviction for *conspiracy* to distribute a controlled substance "is not a 'controlled substance offense' under the career offender enhancement, [U.S.S.G.] § 4B1.1" because "the text of § 4B1.2(b) unambiguously does not include inchoate offenses," and the Supreme Court's decision in *Kisor v. Wilkie* no longer permits lower courts to rely on the commentary of an unambiguous guideline. *Castillo*, 69 F.4th at 664. Determining whether the Court may consider the *Castillo* decision in Defendant's pending Section 2255 motion raises complex questions, including whether *Castillo* articulated a new substantive rule that applies retroactively on collateral review. *See Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) ("New substantive rules generally apply retroactively."); *id.* at 353 ("A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes."); *see also Miller v. United States*, 735 F.3d 141, 147 (4th Cir. 2013) (holding that prior circuit precedent, *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc),[5] "announced a new substantive rule that is retroactive on collateral review"). Defendant's filings also raise complex questions about whether his past convictions under California state law are predicate offenses which qualify him for the career-offender sentencing enhancement under the "modified categorical approach." *See United States v. Murillo-Alvarado*, 876 F.3d 1022, 1026 (9th Cir. 2017) (explaining the Ninth Circuit's "three-step analysis" for determining "whether a prior conviction under state law qualifies as a predicate drug trafficking offense under the Sentencing Guidelines"). Finally, after review of the financial affidavit Defendant attached to his original Section 2255 motion (Def.'s Mot. at 32 – 33, ECF No. 139), the Court finds

---

[5] In *Simmons*, the Fourth Circuit held that a defendant's prior state law conviction is not a prior offense "punishable by imprisonment for a term exceeding one year" which qualifies as a predicate felony conviction for purposes of a federal sentencing enhancement if the state sentencing makes no special finding (such as a recidivist or aggravation finding) necessary to expose the defendant to a sentence greater than one year. 649 F.3d at 243.

Defendant is "financially unable to obtain representation." Accordingly, the Court concludes that this is a rare case in which appointment of counsel is appropriate.

The Court expresses no opinion at this stage on the merits of Defendant's Section 2255 motion. In this Order, the Court simply finds that Defendant's Section 2255 motion raises substantial and complex procedural and legal questions warranting appointment of counsel. The Court therefore appoints Federal Defenders of San Diego Inc. ("FDSDI") as Defendant's substitute counsel for the purpose of litigating his post-conviction motions and relieves Defendant's prior counsel, Thomas S. Sims. *See Christeson v. Roper*, 574 U.S. 373, 378 (2015) ("a 'significant conflict of interest' arises when an attorney's 'interest in avoiding damage to [his] own reputation' is at odds with his client's 'strongest argument'" and it is an abuse of discretion for a district court to refuse to allow counsel to withdraw when such a conflict arises) (quoting *Maples v. Thomas*, 565 U.S. 266, 285–86, n.8 (2012)).

The Court **SETS** a status conference for **February 9, 2024, at 11:30 AM**, in Courtroom 13A. At the status conference, counsel shall be prepared to discuss how they propose to proceed in this litigation including their positions on permitting Defendant to file an amended petition and Defendant's pending motions (ECF Nos. 177, 185).[6]

**B. Motion for Protective Order**

Defendant argues that the waiver of attorney-client privilege effected by Defendant

---

[6] The Court observes that neither party applied the relevant standard in their filings pertaining to Defendant's second motion for leave to amend (ECF No. 177). The Federal Rules of Civil Procedure apply to federal habeas proceedings, including Section 2255 proceedings. Fed. R. Civ. P. 81(a)(4). Federal Rule of Civil Procedure 15 governs amendments to habeas petitions, including Section 2255 motions. *See Mayle v. Felix*, 545 U.S. 644, 655 (2005) (citing 28 U.S.C. § 2242); *Woods v. Carey*, 525 F.3d 886, 890 n.3 (9th Cir. 2008). Under Rule 15, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a court may decline to grant leave to amend if there is "evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . .'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Further, an amendment made after the limitations period has run relates back to the original habeas petition under Rule 15(c) "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts." *Mayle*, 545 U.S. at 664 (citing Fed. R. Civ. P. 15(c)(2)).

filing a Section 2255 motion raising IAC claims is limited and that this Court should enter a protective order to reflect the limited nature of the waiver. (ECF No. 160.) Judge Burns never ruled on this motion and it has been pending since May 2021.

Judge Burns found that Defendant had necessarily effected a waiver of attorney-client privilege by bringing an IAC claim, and ordered Defendant's trial counsel to submit

> an affidavit . . . under penalty of perjury, addressing Javier's contentions at pages 22–23 of [Defendant's Section 2255] motion. At a minimum, Sims must answer these questions:
> 1. Did you tell Javier he would be sentenced to no more than ten years in prison?
> 2. Did you advise Javier that Judge Crawford's statements to him about the possible length of his sentence were inaccurate or unreliable?
> 3. Did you advise or direct Javier to disregard or disbelieve anything Judge Crawford had already told him, or anything she would or might tell him in the future?
> 4. Did you advise or direct Javier to tell Judge Crawford anything pertaining to his knowing and voluntary guilty plea that was not accurate? These include, without limitation: whether he had reviewed and discussed the plea agreement with you and had all his questions answered, whether he understood the plea agreement, whether anyone had made any promises to him (other than those in the plea agreement) to persuade him to plead guilty, whether he understood everything she explained to him at the hearing, and whether he was in fact guilty.

(Order dated February 1, 2021, at 2–3, ECF No. 140.) On February 16, 2021, Sims filed an ex parte motion to clarify the scope of the waiver of attorney-client privilege. (ECF No. 142.) Judge Burns clarified that "anything" Javier mentioned "as part of his ineffective assistance of counsel claim is no longer privileged or confidential." (Order dated February 17, 2021, at 3, ECF No. 144.) On March 1, 2021, Sims filed an affidavit on the public docket (ECF No. 147) and a supplemental affidavit under seal (ECF Nos. 149, 151). On May 7, 2021, Defendant filed a motion for protective order. (ECF No. 160.)

"It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer." *Bittaker v. Woodford*, 331 F.3d

715, 716 (9th Cir. 2003). However, the Ninth Circuit has held that "such waiver is narrow and does not extend beyond the adjudication of the ineffectiveness claim in the federal habeas proceeding." *Lambright v. Ryan*, 698 F.3d 808, 818 (9th Cir. 2012). Thus, when a district court determines that a petitioner's assertion of IAC claims effects a waiver of the attorney-client privilege, it has "a duty to enter a protective order prior to ordering the disclosure of privileged materials." *Id.* When a district court determines that an IAC claim effects a waiver of the attorney-client privilege, the court "must enter appropriate orders clearly delineating the contours of the limited waiver before the commencement of discovery, and strictly police those limits thereafter." *Bittaker*, 331 F.3d at 728. "[I]t is an abuse of discretion to order disclosure without entering a protective order." *United States v. Singleton*, No. 16-CR-00518-BLF-1, 2021 WL 2662121 (N.D. Cal. June 29, 2021).

Applying this standard, the Court finds that Defendant is entitled to a protective order. The Court agrees with Judge Burns' order dated February 17, 2021, finding that Defendant waived his attorney-client privilege as to any facts alleged in his Section 2255 motion pertaining to his IAC claims. The Court narrowly construes the waiver of attorney-client privilege to permit the Government to take discovery from Mr. Sims only as necessary to respond the IAC claims Defendant asserted in his Section 2255 motion. *See Lambright*, 698 F.3d at 813 ("[A] habeas petitioner waives his attorney-client privilege in a proceeding raising an ineffective assistance of counsel claim, but that such waiver is narrow and limited to what is necessary to allow the state to fairly defend against such claim.") The Government may not use any discovery containing privileged communications, including the Sims Affidavits (ECF Nos. 147, 149, 151), for any purpose other than litigating Defendant's Section 2255 motion and may not disclose such discovery to other persons or agencies beyond those assisting in litigation of the Section 2255 motion. Any filing containing privileged communications shall be filed under seal. Accordingly, the Clerk is directed to **SEAL** the Sims Affidavit (ECF No. 147.)

### C. Motion to Compel Production and Objection to Sims Affidavit

Lastly, the Court addresses Defendant's motion to compel production of records

(ECF No. 158) and objection to the Sims affidavit (ECF No. 162). In light of the Court's appointment of counsel, the Court denies Defendant's motion to compel production of records and encourages Defendant to work with appointed counsel to obtain any requested records. The Court also overrules, without prejudice, Defendant's objection to the Sims affidavit. Defendant may obtain additional discovery from Mr. Sims with the assistance of appointed counsel should it later become necessary.

## IV.   CONCLUSION AND ORDER

For the foregoing reasons, the Court **HEREBY ORDERS** as follows:

1. FDSDI is **APPOINTED** as counsel for Defendant for the purpose of litigating post-conviction motions. Counsel shall file a notice of appearance within 14 days of the date of this Order.

2. Attorney Thomas S. Sims is **RELIEVED** as counsel for Defendant.

3. Defendant's motion for protective order (ECF No. 160) is **GRANTED**.

4. Defendant's motion to compel production of records (ECF No. 158) is **DENIED**.

5. Defendant's objection to the Sims Affidavit (ECF No. 162) is **OVERRULED** without prejudice.

6. The Clerk is **DIRECTED** to (a) forward a copy of this Order to FDSDI; (b) update the docket to reflect the termination of Mr. Sims as counsel; and (c) **SEAL** the Sims Affidavit (ECF No. 147).

7. A status conference is **SET** for Friday, **February 9, 2024, at 11:30 AM**, in **Courtroom 13A**.

This Order disposes of ECF Nos. 158, 160, 162, 164, and 168.

**IT IS SO ORDERED.**

Dated: January 11, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court